## SANDERS *vs.* STOKES.

[TROVER AGAINST SHERIFF FOR CONVERSION OF CHATTELS.]

1. *Admissibility of evidence distinguished from sufficiency.*—Evidence which, however weak, tends to establish a fact material to the issue, is admissible ; its sufficiency being a question for the jury,. under proper instructions from the court.

2. *Verbal sale of chattels.*—In this State, a bill of sale, or other writing, is not essential to pass the title to slaves or other personal chattels.

3. *Alteration and rescission of contract.*—After a verbal sale of chattels has been consummated by delivery, neither a subsequent change in the mode of payment, nor the subsequent acceptance of a bill of sale, operates a divestiture of the title, or a rescission of the contract.

4. *Estoppel against purchaser by acceptance of bill of sale.*—A purchaser of personal chattels, having acquired a title by verbal contract consummated by delivery, is not estopped from asserting and relying on that title, by the mere subsequent acceptance of a bill of sale from his vendor, without a rescission of the verbal sale.

5. *Admissibility of parol evidence of sale without production of writing.*—Where a verbal sale of chattels is perfected by delivery, and a bill of sale subsequently accepted from the vendor, the verbal sale may be proved by parol, without the production of the writing.

Sanders v. Stokes.

Appeal from the Circuit Court of Perry.

Tried before the Hon. Robert Dougherty.

This action was brought by Marcus and Penolia Sanders, infants suing by their next friend, against William W. Stokes, to recover damages for the conversion of several articles of personal property, which the plaintiffs claimed under a deed of gift from their grand-father, William Sanders, and which had been seized by the defendant, as sheriff of Perry county, under sundry executions against Sherrod Sanders, who was plaintiffs' father. The deed under which plaintiffs claimed was executed in said county, in April, 1849; conveyed a tract of land, several slaves, and other articles of personal property, to Elizabeth Sanders, who was the mother of plaintiffs and the wife of said Sherrod Sanders, for her sole and separate use, during her life, jointly with her children; and contained a provision, that the property should be divided among her children at her death. The property conveyed by this deed was delivered by the grantor to said Sherrod Sanders, to control and manage, pursuant to the terms of the deed, for the benefit of the grantees. Mrs. Elizabeth Sanders died in 1851, leaving the plaintiffs her only surviving children, who continued to reside with their father. Said Sherrod employed the slaves in cultivating the land, and, with the proceeds of the crop thus raised, bought the wagon and other articles now sued for, "as agent of plaintiffs, and for the purpose of keeping up the farm, and claimed no interest therein on his own account." It was shown that said Sherrod failed in business in 1845, and continued from that time insolvent; "but there was no proof of any debt existing against him prior to 1852, when the judgments were rendered under which, in 1853, said property was sold by the defendant as sheriff."

"The defendant proved that, in 1845, and for several years prior thereto, said Sherrod Sanders was the owner of the slaves and other personal property conveyed by said deed; and insisted that said William Sanders never had any valid title to said property, but that the same

was liable for the debts of said Sherrod. The plaintiffs then introduced evidence, tending to show that, in 1845, William Sanders was bound as surety for said Sherrod, on debts amounting to about $10,000, due to persons in Mobile, where said Sherrod was engaged in running a steamboat; that William Sanders met with said Sherrod, in the latter part of 1845, in Perry county, where all said negroes then were, and expressed to him much uneasiness about said debts for which he was bound; that Sherrod assured him that he was making *lots* of money in Mobile, and that he need not be at all uneasy about said debts. Green Sanders, a witness for plaintiff, testified, that William Sanders, not being satisfied with said assurances of Sherrod, thereupon entered into a verbal agreement with said Sherrod, for the purchase of said slaves, and all the stock, horses, &c., of Sherrod about the farm; and that all said property was thereupon delivered by Sherrod to said William Sanders. Said witness further testified, that it was then and there agreed between said Sherrod and William Sanders, that they should immediately go to Mobile together, and, if said William there ascertained that said Sherrod was getting along prosperously in his business, and that said William was not likely to become involved on account of said suretyship, then all said property was to be delivered back to Sherrod, but otherwise it was to be kept by William Sanders, and the sale completed; that said William and Sherrod, in company with witness, went to Mobile a few days afterwards, as agreed on, and, when they arrived there, ascertained that Sherrod had failed, and that William would have to pay said surety debts; that it was then and there agreed between William and Sherrod, that said William should keep said property in his own right, and should pay said surety debts as the purchase-money; that William thereupon, in pursuance of this agreement, paid about $10,000 in satisfaction and discharge of said debts, and Sherrod thereupon executed to him a written bill of sale for said slaves and all the stock on his farm. Plaintiffs failed to produce said bill of sale on the trial, or to give any account thereof, it not appearing to have ever been in their posses-

Sanders v. Stokes.

sion, or under their control; and stated, that they did not expect to offer said bill of sale in evidence. On motion of defendant's counsel, the court excluded all the testimony of said Green Sanders from the jury; and the plaintiffs excepted.

"The plaintiffs then offered to prove the *factum* of a sale of said negroes, horses, &c., by Sherrod to William Sanders in the fall of 1845, independently of said bill of sale; but, on defendant's objection, the court excluded this evidence, and the plaintiffs excepted. Plaintiffs then offered to prove, that said William Sanders, in the fall of 1845, at the request of said Sherrod, paid $10,000 to the creditors of Sherrod as the purchase-money of said property; which evidence, also, the court excluded, and the plaintiffs excepted. Plaintiffs, having introduced evidence, tending to show that William Sanders went into possession of said slaves, and retained possession from the fall of 1845 to the execution of his said deed, and held possession under claim of title, then offered to prove that said Sherrod, while William was in possession of said property, but before the execution of said deed, admitted that he had sold said property to William, and had been paid by him $10,000 for it. The court excluded this evidence, also, on the defendant's objection, and plaintiffs excepted. The court then ruled, that plaintiffs would not be allowed to introduce any verbal evidence of the sale of said property by Sherrod to William Sanders, or of the payment of the purchase-money by said William, without producing said bill of sale. Plaintiffs excepted to this decision of the court, and ceased to offer such verbal evidence. It was in evidence, also, that the negroes, horses, stock, &c., which were delivered by said Sherrod to William Sanders, were worth about $5,000."

The rulings of the court on the evidence, as above stated, are now assigned as error.

WM. M. BROOKS, for the appellant, cited P. & M. Bank v. Borland, 5 Ala. 541; Snodgrass v. Branch Bank at Decatur, 25 Ala. 161; Goodgame v. Cole, 12 Ala. 77; Dubose v. Young, 14 Ala. 138; 6 Munford, 200.

I. W. GARROTT, *contra*, cited Yarborough v. Hudson, 19 Ala. 653; Scarborough v. Reynolds, 12 Ala. 252, 263; 9 Vermont, 285; 1 Wendell, 424; 1 Johns. 467; 4 Phil. Ev. 596.

RICE, C. J.—The distinction between the *admissibility* of evidence and its *sufficiency*, was lost sight of in the court below. However weak evidence may be, if it is pertinent, and tends to establish a fact material to the case or defense, it is *admissible*. The question of its *sufficiency* is for the jury, under proper instructions from the court.—Smith v. Armstead, 7 Ala. 698; P. & M. Bank v. Borland, 5 *ib.* 531; Wallis v. Rhea, 10 *ib.* 451; Cuthbert v. Newell, 7 *ib.* 457; Bates v. Terrell, 7 *ib.* 129.

It is obvious from the bill of exceptions, that *the fact of a sale*, by Sherrod Sanders to William Sanders, in the latter part of 1845, of the negroes and horses mentioned in the deed executed by the latter in 1849, was a material fact; and that the plaintiffs were entitled to prove it by any competent evidence. The true question, therefore, as to this matter, is, whether any of the evidence offered by the plaintiffs to prove that fact, and excluded by the court, was *competent* for that purpose.

No bill of sale, or other writing, is essential, in this State, to pass the title to slaves, horses, or other personal chattels. And the evidence of the witness Green Sanders, that in Perry county, in the latter part of 1845, under the circumstances detailed by the witness, William Sanders "entered into a verbal agreement with Sherrod, for the purchase of said negroes, and all the stock, horses, &c., of Sherrod about the farm, and thereupon the said property was all delivered by Sherrod to said William Sanders,"—was competent. To say the least of that evidence, it *tended to prove* a sale by Sherrod to William at that time; and the court below erred in excluding it. For, conceding that other portions of the evidence of the same witness *tend* to show that the verbal agreement for the purchase, accompanied by the actual delivery, was not *intended* to pass the title; yet that concession would not render *inadmissible* the evidence of the verbal agreement and the delivery, nor

justify the court in excluding it from the consideration of the jury. If that evidence had been admitted, no court can say or know that the plaintiffs would not have proceeded to prove the terms of that purchase, and to introduce such evidence as would have convinced the jury that the title to the property passed to William at that time, and that it was the *intention* of Sherrod that it should so pass. And it is very clear that, if the title did pass to William Sanders at that time, neither a mere subsequent change in the mode of payment, nor a mere subsequent acceptance of a bill of sale for the property from Sherrod Sanders, would divest or affect the title which had passed by the previous transaction, nor operate as a rescission of that transaction.—Caraway v. Wallace 2 Ala. 542. But if it be conceded, that such change in the mode of payment, and the execution of such bill of sale, would divest the title which had vested in William by the previous transaction, and operate as a rescission of that transaction; yet it is certain that the court below was not authorized to assume *the credibility and conclusiveness of the evidence* which tended to prove such change in the mode of payment, and the execution of such bill of sale, and upon that assumption to proceed to exclude from the jury the evidence which tended to prove the prior verbal sale and delivery.—Cuthbert v. Newell, *supra;* Terrell v. Bates, 7 Ala. 129.

Nothing appears in the bill of exceptions, which can estop the plaintiffs from proving that the title to the property passed to William Sanders by the transaction between him and Sherrod *in Perry county;* and if that proof is made, the plaintiffs may be able to recover, without resorting to the bill of sale, which was subsequently executed by Sherrod to William in *Mobile.* If a man acquires title to personal property by a verbal sale, his mere subsequent acceptance of a bill of sale from his vendor, without any rescission of the verbal sale, cannot estop or exclude him from proving and relying on his title acquired under the verbal sale. The design and intention of the parties, in executing such bill of sale, may have been merely to furnish "more certain and permanent evidence of a subsisting ver-

bal contract" of sale.—Caraway v. Wallace, *supra*; Adams v. Davis, 16 Ala. 748. And in such a case, the failure to produce the bill of sale, or to account for its non-production, does not have the effect of excluding evidence of the prior verbal sale.—Allen v. Pink, 4 Meeson & W. 140.

In determining the question of the admissibility of the evidence, the court below gave undue weight and effect to the failure of the plaintiffs to produce the bill of sale, or to account for its non-production. That failure does not go to the *admissibility* of the evidence, but may perhaps go to its credibility or weight.

A special application of the views above expressed to each ruling of the court below upon the evidence, is deemed unnecessary. We think it enough, in connection with those views, to declare that, for the errors above pointed out, the judgment is reversed, and the cause remanded.